```
          UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

JACK ANGIUS,

       Plaintiff,

v.                                      Civil Action No. 2:06-1006

BRANCH BANKING AND TRUST
COMPANY and CARL BOWMAN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       Pending is plaintiff's motion to remand, filed December 19, 2006. Also pending is defendant's motion for leave to file a surreply, filed February 27, 2007, which motion is hereby ORDERED granted.

I.

       Plaintiff Jack Angius is a West Virginia citizen. (Am. Compl. ¶ 1). Defendant Branch Banking and Trust ("BB&T") is a North Carolina citizen. (Not. of Remov. ¶ 7). Defendant Carl Bowman is a West Virginia citizen. (Am. Compl. ¶ 3).

       In late April of 2004, Mr. Angius contracted with

Walker Development to build a home for $143,000. (Id. ¶ 4). Mr. Angius obtained a residential construction loan from BB&T to assist him in funding the project. (Id. ¶ 5). Carl Bowman was the loan officer who handled Mr. Angius's loan. (Defs.' Mem. Supp. Mot. 2). Bowman is no longer employed by BB&T. (Pl.'s Mem. Supp. Mot. 5).

Mr. Angius alleges that, in making the loan, BB&T agreed not to disburse funds to the builder until each portion of the construction agreement was completed. (Am. Compl. ¶¶ 6, 7). He further alleges that BB&T disbursed funds before the corresponding construction work was completed, in violation of the agreement. (Id. ¶¶ 9, 10).

With substantial work remaining to complete the residence, Walker Development ceased construction and filed for bankruptcy. (Id. ¶ 11). At the time, insufficient funds remained on the construction loan to cover the work necessary to complete the residence. (Id. ¶ 12). Mr. Angius claims that this deficiency resulted from BB&T's untimely disbursements. (Id.).

Thereafter, BB&T offered Mr. Angius an additional loan to complete the construction, provided Mr. Angius agreed to release BB&T and Carl Bowman of any and all liability for any

2

improper payments made under the original loan. (Id. ¶ 13). Mr. Angius declined the second loan from BB&T and sought additional financing elsewhere. (Defs.' Surreply 2).

Based upon these facts, Mr. Angius alleges the following three claims: count 1, BB&T and Bowman breached a duty to timely disburse funds by negligently and untimely releasing funds; count 2, BB&T and Bowman breached a duty to act in good faith and fair dealing by negligently and untimely releasing funds and by conditioning a second loan to complete the residence on plaintiff's release of BB&T from liability; and count 3, BB&T and Bowman, aware of plaintiff's financial distress, unconscionably withheld a second loan to complete the residence until plaintiff released both of them of liability for their prior conduct. (Compl. ¶¶ 15-27). Mr. Angius seeks compensatory and punitive damages. (Id. prayer for relief).

On November 11, 2006, defendants removed on diversity grounds, claiming that Bowman was fraudulently joined. (Not. of Remov. ¶ 8). On December 19, 2006, Mr. Angius moved to remand. Defendants contend that Bowman was fraudulently joined inasmuch as he was a BB&T employee acting within the scope of his employment and not a party to the contract between BB&T and Mr.

Angius.[1]  (Id. ¶ 9).  Particularly, as to the second and third counts, defendants assert that Bowman was neither involved in any manner with the decision to place the conditions upon the second loan nor ever personally communicated with Mr. Angius regarding the second loan.[2]  (Defs.' Surreply 2).  Mr. Angius counters that he seeks relief based upon Bowman's "individual negligence" as a participant in the alleged wrongdoing.  (Pl.'s Mem. Supp. Mot. 2; Pl.'s Reply Mem. Supp. Mot. 3).

## II.

The fraudulent joinder standard is well settled.  Our court of appeals lays a "heavy burden" upon a defendant removing a case on such grounds:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that

---

[1] Defendants have provided an affidavit, signed by Roger Mooney, Vice President and Regional Credit Officer/SAO of BB&T, stating that Bowman acted within the scope of his employment at all times relevant to this action.  (Mooney Aff. ¶ 6).  To the extent that the affidavit conflicts with Mr. Angius's allegations, it must be disregarded, as all questions of fact and law must be read in the light most favorable to the plaintiff and must be resolved against the defendant.  See <u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999)(citing <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232-33 (4th Cir. 1993)).

[2] As earlier noted, to the extent that these facts conflict with Mr. Angius's allegations, they must be disregarded.

4

>the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis added) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

All open questions of fact and law must be resolved in the light most favorable to the plaintiff. Mayes, 198 F.3d at 464. In Hartley, for example, the court was faced with an open question of law requiring a six-part analysis with a "judgment call at every turn." Hartley, 187 F.3d at 424-25. The court noted that "the presence or absence of each element [depended] on several variables and [required] factual investigation," that the judgement calls could go either way, and that "courts may differ in their resolutions of the issue." Id. Thus, the court held that "a truly 'novel' issue such as this cannot be the basis for finding fraudulent joinder." Id.

As the decision in Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis

5

in this circuit. Any shades of gray are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> [Defendant] contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.
>
> <u>In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact</u>. Allowing joinder of the public defendants is proper . . . because courts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties [as] joined . . . unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> . . . . .
>
> <u>We cannot predict with certainty how a state court and state jury would resolve the legal issues</u> and weigh the factual evidence in this case. <u>[Plaintiff's] claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief</u>. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

<u>Id.</u> at 425-26 (emphasis added).

6

III.

As to Mr. Bowman, plaintiff alleges three causes of action: (1) that Bowman breached a duty to timely disburse funds by negligently and untimely releasing funds; (2) that Bowman thereby breached a duty to act in good faith and fair dealing as well as by conditioning a second loan on plaintiff's release of BB&T from liability; and (3) that Bowman was aware of plaintiff's financial distress and unconscionably withheld a second BB&T loan until plaintiff released both Bowman and BB&T from liability. (Compl. ¶¶ 15-27).

Plaintiff's first cause of action is broadly worded. At first blush, it appears that this "negligence" claim is nothing more than a breach of contract claim, as is maintained by defendants. (Defs.'s Resp. Opp'n Mot. 2-3). Were this the case, count 1 would fail to state a claim against Bowman because he was not a party to the contract between Angius and BB&T and, so, cannot be held liable for breach of the contract. See Hoon v. Hyman, 87 W. Va. 659, 105 S.E. 925 (1921); Hurricane Milling Co. v. Steel & Payne Co., 84 W. Va. 376, 99 S.E. 490 (1919)(holding "[a]n agent or broker contracting for and on behalf of a principal known or disclosed to the person with whom the contract

7

is made, is not personally bound by it, nor liable for a breach thereof, unless the credit has been extended to him or he has expressly bound himself by the contract in some form.").

However, reading the allegations from a plaintiff-centered perspective, Mr. Angius attempts to plead a tort. This is confirmed by his briefing. (Pl.'s Mem. Supp. Mot. 2; Pl.'s Reply Mem. 1-2). Thus, respecting the first cause of action, the pivotal issue concerns whether an agent owes an independent duty of care to a third party in the performance of a contract existing between the third party and the agent's principal.

A number of West Virginia cases suggest that an agent may be liable to a third party in tort in some circumstances. Conrad v. ARA Szabo, 198 W. Va. 362, 480 S.E.2d 801 (1996)("Agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship."). Although defendants correctly assert that the agent must owe an independent legal duty to be held liable, defendants have pointed to neither a West Virginia statute nor case stating that no independent duty exists under substantially similar facts.

The West Virginia Supreme Court of Appeals has not addressed the scope of an agent's duty, if any, to a third party in the performance of a contract between the agent's principal and the third party. Other courts, however, have addressed this issue. For example, the Supreme Court of Virginia in <u>Miller v. Quarles</u> held that "an agent's negligent performance of his principal's contract subjects the agent to tort liability to the other contracting party." <u>Miller</u>, 242 Va. 343, 344, 410 S.E.2d 639, 640 (1991). There, the court overturned the trial court's holding that the defendant agent was acting within the scope of his employment, that the damages flowed from a contract to which the agent was not a party, and therefore, that the agent could not be held liable in contract or tort. <u>Id.</u> at 641. Virginia's highest court having recognized a duty in similar factual circumstances suggests that it is indeed possible that the West Virginia Supreme Court of Appeals may also recognize such a cause of action.

Moreover, under West Virginia law, the question of whether a duty exists under a given set of facts is a complex one to be determined by the court as a matter of law. <u>Aikens v. Debow</u>, 208 W. Va. 486, 491, 541 S.E.2d 576, 581 (2000). In <u>Aikens</u>, the West Virginia Supreme Court of Appeals set forth the

9

attendant considerations aiding the court's inquiry:

> [L]egal commentators agree that "[t]he determination of any question of duty . . . has been held to be an issue of law for the court rather than for the jury, to be determined <u>by reference to the body of statutes, rules, principles, and precedents which make up the law</u>." 57A Am. Jur. 2d Negligence § 86, at 142 (2d. ed. 1989) (footnote omitted).
>
> We recognized in <u>Robertson v. LeMaster</u>, 171 W. Va. 607, 301 S.E.2d 563 (1983), that while foreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another, <u>"[b]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection[.]"</u> <u>Id.</u> at 612, 301 S.E.2d at 568. <u>"Such considerations include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant."</u> <u>Id.</u>

<u>Id.</u> (emphasis added). Thus, a determination of the scope of a duty, if any, in a specific context requires a complex factual and legal analysis.

As noted earlier, the court's opinion in <u>Hartley</u> requires the court to resolve open questions of fact and law in favor of the plaintiff, particularly when the question is a complex one to resolve. <u>Hartley</u>, 187 F.3d at 425. As in <u>Hartley</u>, the court would be called upon to apply a multi-factor test, "requiring a judgment call at every turn[,]" in determining whether to impose a duty upon Bowman under these circumstances. <u>Id.</u> The Virginia Supreme Court's opinion in <u>Miller</u> shows that,

10

as in Hartley, "courts may differ in their resolutions of this issue." Id. Inasmuch as the court, with respect to the remand issue, is required to resolve the open factual and legal questions in Mr. Angius's favor, fraudulent joinder is absent.[3]

IV.

The court, accordingly, ORDERS that plaintiff's motion to remand be, and it hereby is, granted. The court further ORDERS that this action be, and it hereby is, remanded to the Circuit Court of Kanawha County for all further proceedings. In view of this disposition, the court need not address the remaining motions.

The Clerk is directed to forward a copy of this memorandum opinion and order to counsel of record and a certified

---

[3] Additionally, the plaintiff in his third cause of action undertakes to state a claim against Bowman for "unconscionable" conduct. This rather amorphous claim appears to be based on Bowman's alleged demand that plaintiff, as a condition of Bowman's approval of a second loan by BB&T, execute a release of Bowman individually, as well as BB&T, for their prior conduct of negligently releasing the proceeds of the construction loan without adequate proof of performance. Whether such a claim is cognizable under West Virginia law need not be decided in view of the court's ruling herein.

11

copy to the clerk of court for the Circuit Court of Kanawha County.

DATED: September 18, 2007

John T. Copenhaver, Jr.
United States District Judge